SMITH v. KIRKPATRICK FINANCE COMPANY.

Opinion delivered June 16, 1930.

*Horace Sloan,* for appellant.

*Roy Penix,* for appellee.

MEHAFFY, J. The Jonesboro Machine Company was a corporation engaged as a retail dealer of automobiles at Jonesboro, Arkansas, in November and December, 1928, and for a number of years prior thereto. N. B. Stroud was the president and general manager of the corporation, owned a majority of the stock and was in absolute control of the affairs of the corporation. On November 28, 1928, N. B. Stroud, as general manager of the corporation, sold an automobile to himself and wrote a series of twelve notes for $45 each, payable to the Jonesboro Machine Company, signed the notes himself, sent one of the boys into the warehouse where the corporation kept its automobiles to get the number of the car Stroud was driving. In each of the notes the automobile was described and its number given. The notes describing the car retained title in the corporation to the automobile until all the notes were paid. It was also stated in the notes that, on default of payment of said notes at maturity or any of said payments, all should become due and Stroud forfeited his right under the contract. Stroud indorsed on the back of the notes the following words: "Jonesboro Machine Co., by N. B. Stroud, President," and sold and transferred said notes to Paul Smith. This automobile claimed by Stroud to have been purchased

from the corporation remained with the other cars belonging to the corporation which were kept for sale, had a dealer's tag on it and nothing to indicate that it was owned by Stroud or that it was not a car belonging to the corporation kept for sale just as its other cars. On December 1, 1928, this same car was sold to Pearcy Marlar for $812.10. Marlar paid at the time he purchased the car $243, leaving a balance of $569.10 payable in twelve monthly installments of $47.47, beginning January 1, 1929. This was a conditional sales contract, the cor poration retaining title, the notes being similar in this respect to the notes executed by Stroud to the corporation. The Jonesboro Machine Company sold the notes executed by Marlar before maturity to the Kirkpatrick Finance Company. Four or five months later the Jonesboro Machine Company was adjudged a bankrupt. Marlar paid all of the purchase price of the automobile to the Kirkpatrick Finance Company except $332. He failed to make the payments when due, and the Kirkpatrick Finance Company brought suit in the chancery court of Craighead County against Marlar, Paul Smith and J. Q. Lane, as trustee in bankruptcy of the Jonesboro Machine Company, alleging that Marlar had purchased the car under a conditional sales contract from the Jonesboro Machine Company and that the balance due was $332, and caused a writ of specific attachment and summons to be issued and served on Marlar attaching the automobile. He alleged that Lane was the trustee in bankruptcy, and Paul Smith claimed a prior lien on the automobile.

Paul Smith filed an answer alleging that Stroud had purchased the car, and that he had purchased the notes from the Jonesboro Machine Company before maturity, claimed title to the automobile, and that his title was superior to any interest claimed by the Kirkpatrick Finance Company. He claimed that he purchased the notes prior to the time the car was sold to Marlar, and that he was an innocent purchaser for value before maturity. He also alleged that the Kirkpatrick Finance Company had

waived any title it had by suing for a money judgment with an attachment instead of suing in replevin for the automobile. It was also alleged that Marlar was insolvent, that the automobile was deteriorating, and asked that a receiver be appointed, that the plaintiff's complaint be dismissed, and that he be declared the owner of the automobile.

Pearcy Marlar also filed answer and cross-complaint in which he denied the allegations in Smith's cross-complaint.

There is very little conflict in the evidence, and the evidence will not be set out in full, but attention called to such parts of it as appears necessary in order to understand the facts.

N. B. Stroud was president and general manager of the Jonesboro Machine Company, a dealer in automobiles. Stroud owned a majority of the stock in the Jonesboro Machine Company and had absolute control and management of its affairs. No one connected with the Jonesboro Machine Company except the bookkeeper knew anything about Stroud selling the car to himself, and the evidence does not show that the matter was discussed with the bookkeeper. She knew about it evidently because she was bookkeeper.

The court entered a decree in favor of the appellee and ordered the automobile sold if the judgment was not paid and found against Smith. N. B. Stroud, the general manager of the Jonesboro Machine Company, made the contract and notes, signed them himself and then indorsed them as president of the company and sold them to Smith. This, if it could be said to be a sale at all, was a sale by Stroud to himself. One cannot make a contract with himself. Appellant calls attention to 2 C. J. 702, holding that a sale to an agent is not absolutely void, and that it may be ratified by the corporation. But here there was no sale in good faith. Not only was this an attempted sale by Stroud to himself but there was no delivery and no intention to deliver. The automobile remained in the

possession of the corporation just as it was before, had a dealer's tag on it, was apparently a new car and was in fact sold two days after the notes were delivered to Smith, to Marlar as a new car. No pretense was made of delivery. "For as we understand the law, in order to make the sale effectual against subsequent purchasers, or attaching creditors, there must have been actual delivery; a visible and substantial change in the possession." *Davis Mallory & Co. v. Meyer & Co.,* 47 Ark. 210.

This court later held that it was not necessary in all cases that there be actual and visible possession by the vendee, and the court said: "Whenever there is a completed contract of sale and an agreement by the vendor to hold as bailee for the vendee in lieu of an actual delivery, the sale is complete against creditors, if it is not otherwise fraudulent." *Shaul v. Harrington,* 54 Ark. 305.

Under the doctrine announced in the last case there was no sale here. If the parties intend that the property is to be resold by the dealer in the ordinary course of business, this will enable him to transfer title to a *bona fide* purchaser. 24 R. C. L., p. 458.

It was not only the intention of Stroud and the Jonesboro Machine Company to sell the automobile, but Mr. Smith either knew this or was in possession of facts sufficient to put him on inquiry. He talked to Mr. Stroud about turning in cars, and was advised that Stroud always turned them in in three or four months; turned them in so he would not have to take any loss. This necessarily meant that he sold them as new automobiles. The rule announced in the case of *Buchanan v. Com. Investment Trust Co.,* 177 Ark. 579, is applicable here, and the decision in that case is decisive here. The decree is affirmed.